3/2/22, 11:12 AM    Concurring Statement of Commissioner Dawn D. Stump Regarding Enforcement Action Against Payward Ventures, Inc. (d/b/a Kra…

Case 1:20-cr-00500-JGK   Document 307   Filed 03/04/22   Page 1 of 3

# Public Statements & Remarks

# Concurring Statement of Commissioner Dawn D. Stump Regarding Enforcement Action Against Payward Ventures, Inc. (d/b/a Kraken)

**September 28, 2021**

I concur with the Commission's settlement Order regarding Payward Ventures, Inc. (d/b/a Kraken). As described in the Order:

> Kraken is a digital asset company whose primary business is the operation of an online digital asset exchange. The exchange enables customers to engage in retail commodity transactions – specifical the purchase and sale of digital assets, including Bitcoin.[1] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn1)

I write separately to comment on certain implications of the Commission's findings that Kraken: 1) engaged in prohibited retail commodity transactions in violation of Section 4(a) of the Commodity Exchange Act ("CEA")[2] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn2); and 2) operated as an unregistered futures commission merchant ("FCM") in violation of Section 4d(a)(1) of the CEA.[3] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn3)

**The Prohibited Retail Commodity Transactions Finding: Codifying our Guidance**

Although it is not mentioned in the settlement Order, the Commission's finding that Kraken engaged in prohibited retail commodity transactions is informed by its Final Interpretive Guidance on retail commodity transactions involving certain digital assets issued in 2020 (the "Guidance").[4] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn4)  Kraken's conduct as described in the Order aligns with some of the illustrative examples discussed in the Guidance, and it can be no coincidence that the Order defines the "Relevant Period" as beginning in June 2020 – three months after then-Chairman Tarbert announced in March 2020 "that for a period of 90 days the CFTC will forbear from initiating enforcement actions addressing aspects of [the Guidance] that were not plainly evident from prior CFTC guidance, enforcement actions, and case law."[5] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn5)

At the time, I agreed that the Guidance  "provide[d] an efficient and flexible way to communicate the agency's current views on how the actual delivery exception in Section 2(c)(2)(D) [of the CEA bringing certain retail commodity transactions within the scope of Section 4(a)] may apply in various situations."[6] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn6)  However, as the Guidance becomes increasingly relevant to the Commission's enforcement program, I believe it is incumbent upon the Commission to undertake a rulemaking proceeding to supersede the Guidance by adopting binding and enforceable rules that will provide certainty to the marketplace and a shared understanding of the "rules of the road."[7] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn7)

3/2/22, 11:12 AM                Concurring Statement of Commissioner Dawn D. Stump Regarding Enforcement Action Against Payward Ventures, Inc. (d/b/a Kra…

Case 1:20-cr-00500-JGK   Document 307   Filed 03/04/22   Page 2 of 3

Guidance has its place, of course. But I have spoken before of the benefits of codifying interpretations issued by our staff where appropriate,[8] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn8) which accrue in equal measure to the codification of Commission guidance as well. And this particular Guidance, as then-Commissioner Behnam noted at the time, was adopted nearly two-and-a-half years after it was proposed, and more than two years after the public comment period had ended. I agree with his observation that "[i]n the rapidly developing world of digital assets, two years is a lifetime"[9] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn9) – and yet now we are an additional year-and-a-half later still. I believe, therefore, that the Commission should act to replace the Guidance with rules that are based on current input from market participants and members of the public.[10] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn10)

**The Unregistered FCM Finding: Clarifying Our Regulatory Authority**

As recounted in the Guidance, the Commission has long held that certain speculative commodity transactions involving leverage are futures contracts that, pursuant to Section 4(a) of the CEA, must be traded on a designated contract market (a "DCM" – or, in non-CEA language, a futures exchange – that is subject to Commission oversight). However, court decisions called that view into question with respect to certain leveraged transactions involving retail participants.[11] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn11)

In the Dodd-Frank Act,[12] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn12) Congress added Section 2(c)(2)(D) to the CEA to make clear that these retail commodity transactions must be traded on a DCM pursuant to CEA Section 4(a) "as if" they are futures contracts. But it did not comprehensively address how these transactions are to be regulated – and, in the decade since the Dodd-Frank Act was enacted, nor has the Commission.

The Commission finds that Kraken violated CEA Section 4(a) because it engaged in retail commodity transactions that are prohibited by the CEA unless traded on or subject to the rules of a DCM – a registration designation that has neither been requested by nor granted to Kraken. But it also finds that Kraken operated as an unregistered FCM with respect to those transactions, which begs the question: If Kraken had sought to register with the Commission as an FCM, how would it have been expected to operate? Absent these transactions occurring on a DCM, they would continue to be illegal even if Kraken had an FCM registration. Furthermore, how Kraken would be regulated as an FCM is not entirely clear, because many of the Commission's rules governing its regulation of traditional FCMs do not fit Kraken's role as an exchange. It also would be unprecedented for an entity to register as both a DCM and an FCM.

In short, the application of the Commission's FCM rules to an exchange on which retail commodity transactions are traded is uncharted territory at this time. I agree that Kraken's activities meet the definition of an FCM set out in the CEA,[13] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftn13) and that Kraken thus operated as an FCM without registering as such (though I would note this is a rather broad interpretation of the definition beyond the traditional application). I believe that if the Commission is going to hold an exchange liable for operating as an unregistered FCM with respect to retail commodity transactions, it is incumbent upon the Commission to explain in a transparent manner the relevant legal requirements for such an entity that seeks to register as an FCM and how the Commission will apply them in enabling the entity to conduct business with U.S. customers.

---

[1] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref1) Settlement Order at 2.

3/2/22, 11:12 AM    Concurring Statement of Commissioner Dawn D. Stump Regarding Enforcement Action Against Payward Ventures, Inc. (d/b/a Kra…

Case 1:20-cr-00500-JGK Document 307 Filed 03/04/22 Page 3 of 3

[2] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref2) As used herein, the term "retail commodity transactions" refers to the leveraged transactions described in CEA Section 2(c)(2)(D), 7 U.S.C. § 2(c)(2)(D).

[3] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref3) 7 U.S.C. §§ 6(a) and 6d(a)(1), respectively.

[4] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref4) Retail Commodity Transactions Involving Certain Digital Assets, 85 Fed. Reg. 37734 (June 24, 2020).

[5] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref5) Statement of Chairman Heath P. Tarbert in Support of Interpretive Guidance on Actual Delivery for Digital Assets (March 24, 2020), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/tarbertstatement032420a (https://www.cftc.gov/PressRoom/SpeechesTestimony/tarbertstatement032420a).  See also Statement of Commissioner Brian D. Quintenz in Support of Final Interpretive Guidance: Retail Commodity Transactions Involving Certain Digital Assets (March 24, 2020) (". . . I support the Chairman's view that the Commission should exercise its prosecutorial discretion to forbear from initiating enforcement actions addressing aspects of this interpretive guidance that were not plainly evident from prior Commission guidance, enforcement actions, and case law for 90 days after its issuance."), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/quintenzstatement032420 (https://www.cftc.gov/PressRoom/SpeechesTestimony/quintenzstatement032420).

[6] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref6) Guidance, 85 Fed. Reg. at 37736.

[7] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref7) Cf. Statement of Commissioner Dawn D. Stump Regarding Final Rule: Cross-Border Application of the Registration Thresholds and Certain Requirements Applicable to Swap Dealers and Major Swap Participants (July 23, 2020), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement072320 (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement072320) ("Stump Cross-Border Statement").

[8] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref8)  See Statement of Commissioner Dawn D. Stump Regarding Amending Rule 3.10(c)(3) – Exemption from Registration for Foreign Persons Acting as Commodity Pool Operators on Behalf of Offshore Commodity Pools (May 28, 2020), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement052820 (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement052820).

[9] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref9) Statement of Commissioner Rostin Behnam Regarding COVID-19 and CFTC Digital Assets Rulemaking (March 24, 2020), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/behnamstatement032420 (https://www.cftc.gov/PressRoom/SpeechesTestimony/behnamstatement032420).

[10] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref10) As I have said before, because such rules will be binding and enforceable, they must be clear, sensible, and workable.  See Stump Cross-Border Statement, n.7, supra; see also Statement of Commissioner Dawn D. Stump Regarding Proposed Rule:  Cross-Border Application of the Registration Thresholds and Certain Requirements Applicable to Swap Dealers and Major Swap Participants (December 18, 2019), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement121819 (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement121819).

[11] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref11) See Guidance, 85 Fed. Reg. at 37734, citing CFTC v. Zelener, 373 F.3d 861 (7th Cir. 2004) and CFTC v. Erskine, 512 F.3d 309 (6th Cir. 2008).

[12] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref12) Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank Act").

[13] (https://www.cftc.gov/PressRoom/SpeechesTestimony/stumpstatement092821#_ftnref13) 7 U.S.C. § 1a(28).

-CFTC-

Cited in U.S. v. Reed, 20-cr-500 Decided 3/2/22 Argued on 3/1/22. This document is protected by copyright. Further reproduction is prohibited without permission.