M7DHReeS

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        20 Cr. 500 (JGK)

SAMUEL REED,

                                      Sentence
            Defendant.

------------------------------x

                                      New York, N.Y.
                                      July 13, 2022
                                      3:15 p.m.


Before:

                  HON. JOHN G. KOELTL,

                                      District Judge

                       APPEARANCES

DAMIAN WILLIAMS
      United States Attorney for the
      Southern District of New York
SAMUEL RAYMOND
      Assistant United States Attorney

LATHAM & WATKINS LLP
      Attorneys for Defendant
BY:  DOUGLAS YATTER
      BENJAMIN NAFTALIS

Also Present:

Thomas Gergely, Intern USAO
```

M7DHReeS

1            (Case called; appearances noted)

2            THE COURT:  I've received the presentence report

3      prepared May 3, 2022, revised May 31, 2022.  I've received the

4      defense submission dated June 29, 2022, and July 11, 2022.  I

5      received the government's submission dated July 6, 2022.

6            Mr. Yatter, have you reviewed the presentence report,

7      the recommendation, and the addendum, and discussed them with

8      the defendant?

9            MR. YATTER:  We have, your Honor.

10            THE COURT:  Do you have any objections?

11            MR. YATTER:  No, your Honor.  We noted objections to

12      the draft report, and they're reflected in the PSR.  None of it

13      goes to the guidelines range, so no objections, your Honor, has

14      to take up today.

15            THE COURT:  OK.  No factual disputes that I have to

16      decide for purposes of sentence?

17            MR. YATTER:  Correct, your Honor.

18            THE COURT:  I'll listen to you for anything that you

19      would like to tell me in connection with sentence, any

20      statement you'd like to make, anything at all you'd like to

21      tell me.

22            MR. YATTER:  Thank you, your Honor.  May I use the

23      lectern?

24            THE COURT:  Sure.

25            MR. YATTER:  Your Honor, before I begin, I would like

M7DHReeS

to take a moment to introduce some of the people here in the courtroom today supporting Sam who have come from all over the country.

From Sam's family, his wife Aggie is in the front row. His mother, Lauren, is sitting next to her. His father and stepmother, Trace and Barbara, are here. His grandmother, Beverly, is there. His father-in-law Frank is here. His brothers-in-law are here, and several of Sam's good friends, several of whom have submitted letters with our package to your Honor, are here as well. Each of them is here because they love and support Sam. I know Sam is grateful for their support, and I'd like to thank them as well for being here today.

Let me start, your Honor, by saying Sam has admitted his role in BitMEX's failure to implement a know-your-customer and anti-money laundering program. He accepts responsibility for his role in this serious misconduct, and he is deeply remorseful.

The Court has heard recitations of the allegations and the facts in this case on several occasions, including twice recently at sentencings for Mr. Reed's codefendants, so I don't intend to go through all those same points again today. But instead, we want to focus on who Sam is, where he fits in the conduct at issue, and how we think those facts should inform the Court's sentence.

M7DHReeS

1          I've had the pleasure of getting to know Sam well over

2     the past few years, and I'm proud to represent him here today,

3     as is my team.  He's a remarkable individual.  He is genuine,

4     he is humble, and he is kind.  And he has developed a maturity

5     beyond his years.

6          He also possesses an incredible intellectual

7     curiosity.  As my team will attest, it is not often that you

8     meet with Sam and come away without learning something new on a

9     topic or in a field that you never expected to discuss.  But

10    there are two topics that always come up with Sam, and it is

11    clear when he's speaking about them that they are his passions.

12    Those are his family and computer science.  I'd like to speak

13    briefly about each of those areas.

14          As the number of people in this courtroom and the

15    letters submitted for Sam show, he is a dedicated and loyal

16    family member and friend.  He is a devoted husband and father,

17    a proud brother, son, uncle, brother-in-law to the many family

18    members here today and around the country in Massachusetts,

19    Wisconsin, and elsewhere.  He's also a caring and committed

20    friend.

21          Although Sam worked hard and found success in his

22    career, his loved ones always came first.  Rather than stay in

23    Hong Kong with his cofounders, Sam coded for the BitMEX website

24    while traveling with his wife and then from Wisconsin where the

25    couple moved to be near Sam's family.  Later, as they started

M7DHReeS

1   their family and had their first child, they moved to

2   Massachusetts to be near Sam's wife's family.  I think that's a

3   testament to Sam's character and his personality.  From the

4   beginning, he opted for small-town family life over the

5   trappings of the high-profile cryptocurrency world, unlike his

6   cofounders and unlike many in the industry.  He chose to work

7   from a coworking space in Milwaukee and a home office in

8   Massachusetts instead of a fancy high-rise in Hong Kong so he

9   could be near his loved ones.

10          Sam has always been generous, not only with his money

11   but also with his time and his attention.  As we noted in our

12   submission, Sam has used his money to support others,

13   particularly in the area of education, which is near and dear

14   to his heart.  But he's not someone who does good deeds only

15   with a checkbook.  As your Honor knows from our submission,

16   Sam's friends have described how he has given his time to help

17   them in their professional and personal lives.  One of Sam's

18   friends recalled how Sam flew in to visit her for a weekend

19   when she was ill, and she described how he not only spent time

20   with her but helped her do chores and cleaned her home because

21   she was unable to do so.  As she said, and this is in the file

22   your Honor has, that is who Sam is, a man who is genuine, a man

23   who cares, who shuns pretentiousness and remains the solid

24   friend you've always relied on.

25          I think that describes Sam well.  He is the

M7DHReeS

down-to-earth, shirt-off-his-back type of guy.  That was true

when he was growing up in Wisconsin, and it did not change when

he found success.

I'd also like to talk briefly about Sam's passion for

computers and computer science.  He fell in love with computers

as a young boy, tinkering with machines that his father, who's

here with us today, brought home from work.  That love stayed

with Sam ever since, and it led him to develop exceptional

computer programming skills.  I mentioned before that Sam is

intellectually curious, and nowhere is that more obvious than

in discussing computers and technology with him.  He takes

immense pride in his field of work and is always seeking to

grow, learn, and be the best he can be.

He has dedicated himself to programming ever since he

was old enough to work.  In middle school, he fixed neighbors'

computers.  In high school, he set up a corporate network for

an industrial company in his hometown.  In college, at the

worked at the student IT help desk.  After college, he started

out as a programmer for a U.S. Army defense contractor and then

had several jobs as an engineer for various companies in

Washington and then in Hong Kong.

I'll talk in a moment about how that background led to

Sam's role at BitMEX, but before I do, I also want to note that

Sam has given an enormous amount to the programming community.

As we noted in our submission, Sam has been one of the most

M7DHReeS

prolific open source programmers in the world, as measured by

GitHub, an industry-leading code repository.  "Open source"

means Sam's work is public and free.  He is adding to the

world's library of programming knowledge, and he's doing so at

an exceptionally prolific rate.

He also gives back to programmers more directly.  At

his urging, BitMEX leads the industry in support for open

source developers, and as the letters attached to our

submission show, Sam was always willing to help those around

him grow as coders and help solve problems in their coding.

As another of Sam's friends in a letter you have, your

Honor, recounted, he met Sam in a coworking space years ago and

recalled that Sam regularly devoted time to help new and old

members with their technology problems.  This friend added that

half the software and hardware at the coworking space only

worked because Sam took the time to figure it out.  In short,

Sam was not only a guy who preferred low-key coworking spaces

to high-rise offices, but he was the guy there helping others

to succeed.

Now, while I don't want to repeat everything we've

written to your Honor, I do want to highlight a few points.  As

your Honor knows, this is not a fraud case.  This is not a case

with any victims.  No one lost any money.  While this case is

about anti-money laundering compliance, it is not a case about

money laundering.  There is no specified unlawful activity on

M7DHReeS

1    the platform or use of the platform to hide or move proceeds of

2    any illegal activity, and certainly not any evidence that Sam

3    knew about or condoned such activity.  The government cites to

4    suspicion and inquiries in their papers, little or none of

5    which is actually tied to Sam.  But more importantly, there is

6    a material difference between what might have happened and what

7    actually happened.

8            We laid out in our submission why BitMEX was not a

9    platform that would be attractive to a money launderer, and

10   we're speaking here from Sam's perspective.  It was a

11   bitcoin-only platform that did not allow bitcoin to be changed

12   or converted into any other currency, and it used unique wallet

13   addresses that marked transactions on the public blockchain

14   visibly and for all time.  No other exchange does this even

15   today, and BitMEX remains the most traceable group of addresses

16   on any blockchain.

17           To be clear, this does not excuse the failure to have

18   a BSA-compliant AML program, but it does provide important

19   context for how Sam thought about the platform.

20           I make these points because a lot of what's in the

21   government's sentencing arguments are supported by generalities

22   or points that are not tied to Sam, and that matters because

23   today we are talking about Sam.  That brings me to Sam's role

24   in the conduct at issue.

25           Sam has pleaded guilty to one count of violating the

M7DHReeS

1    BSA for willfully causing BitMEX to fail to implement an

2    adequate AML program.  He has fully accepted responsibility for

3    that offense and is deeply remorseful for the bad judgment in

4    not ensuring that BitMEX have a program like this.

5             But, importantly, all parties agree that Sam's role in

6    the offense is different and more limited than the role his

7    cofounders played.  The government does not dispute that, and

8    it's the reason why the guidelines range in Sam's plea

9    agreement is in a lower zone and for a shorter period than his

10   codefendants.

11            Now I want to talk briefly about that more limited

12   role.

13            Before BitMEX, Sam had never worked in the financial

14   industry at all, and he had no experience in finance or in

15   compliance.  When Arthur Hayes first described the project to

16   him in 2013, Sam did not even know what financial derivatives

17   were.  The division of labor among the founders reflected that.

18   Sam was responsible for the front-end programming, and he left

19   the rest -- corporate strategy, business development,

20   marketing, compliance, and legal -- to his more experienced

21   cofounders.  Sam was also on the other side of the world from

22   them and only saw them in person for a few weeks a year.

23            It's also important to note that Sam's area of

24   responsibility for him was all consuming.  When the company's

25   business took off and its product offerings and services

M7DHReeS

1   expanded, Sam faced exponential technological demands to

2   maintain and support the website and API in a secure manner.

3   Sam was so burned out from the never-ending work that in 2018,

4   as your Honor knows, he opted to go on a six-month sabbatical.

5   So from September 2018 to February 2019, he had no involvement

6   in the company's day-to-day operations, and when he returned in

7   2019, it was in a more limited role which he could then do

8   because the company had hired other coders and professionals as

9   a group.

10         Given Sam's limited role and the lack of financial

11   experience, the PSR and the government both recognize that Sam

12   was not an organizer, not a leader of the company's failure to

13   have an AML program.  That's why no leadership enhancement

14   applies for Sam.  That's a meaningful difference, and it's

15   based on meaningful factual distinctions.  Respectfully, your

16   Honor, we believe it also warrants a meaningfully different

17   sentence.

18         Now, the government acknowledges that Sam was not

19   responsible as a leader, that he is less culpable, and that he

20   merits a lesser sentence, but the lesser sentence they

21   recommend is, in fact, very similar to Mr. Delo.  Mr. Delo

22   received 30 months of probation, and the government recommends

23   24 months of probation for Sam.  Mr. Hayes also received 24

24   months of probation, of course with six months of home

25   confinement that no one is seeking here today.

M7DHReeS

1          The government's basis for its recommendation today is

2    that Sam was a co-founder, earned a lot of money, and is a

3    technologist who they allege was uniquely situated to restrict

4    U.S. customers.  Now, I'm summarizing and condensing, but I

5    want to speak briefly about each of those three points.

6          Respectfully, none of those arguments supports the

7    government's recommended sentence.

8          First, there is no dispute that Sam was a co-founder,

9    but the title should not impact the sentence.  What matters is

10   what his role was, and as we've discussed, his role was focused

11   on front-end technology and not the compliance decisions at the

12   heart of this criminal failure.

13         Second, the wealth he earned from the company should

14   not drive this sentence.  BitMEX operated lawfully in

15   jurisdictions outside the United States, and it offered

16   innovative products that have played an important role in the

17   growth and maturation of the global cryptocurrency markets.

18   Moreover, the $10 million fine Sam already paid in connection

19   with his plea agreement vastly exceeds the recommended fine

20   under the guidelines by several orders of magnitude.  That

21   stipulated fine was structured by the government to be based on

22   the gains Sam earned from BitMEX even though it was not based

23   on data.  In other words, to the extent Sam's earnings are

24   relevant at all, they have been addressed through a fine that

25   far exceeds the guidelines recommendation.

M7DHReeS

1          Third, the fact that Sam is an excellent computer

2     programmer does not render him more culpable or justify the

3     government's requested period of probation.  Having never

4     worked in financial services or compliance before, Sam helped

5     implement controls based on guidance he received from others.

6     Sam has admitted that the steps the company took to limit

7     access by U.S. users were insufficient, and he deeply regrets

8     those deficiencies.  But even the government acknowledges that

9     Sam did not organize or lead those compliance decisions, and

10    the measures he helped implement were not a sham, as the

11    government contends.  They succeeded in blocking tens of

12    thousands of potential U.S. users, and they got better over

13    time.

14         The government points to things like VPNs and Tor as

15    supposed loopholes for these controls, but our submission lays

16    out how those arguments, respectfully, misunderstand the

17    technology and the facts.  Those are issues that plague every

18    Internet-based company, including companies with far greater

19    resources and staffing than BitMEX had.  And Sam repeatedly

20    himself told users that their accounts would be shut down if

21    they were found to be using that technology to circumvent the

22    company's controls.

23         At bottom, because of the nature of the Internet and

24    technologies like VPNs, the government's argument is really

25    that the company needed to have a comprehensive KYC program,

M7DHReeS

KYC procedures, earlier than it did.  Now, the company chose to
and started developing KYC beginning in 2019, announced it
publicly in 2020 before the indictment, before any enforcement
action, and then finished implementing it at great expense and
cost and did that following through after the indictment, of
course.

        The lack of such procedures earlier, prior to the
beginning of that period in 2019 and 2020 when they began
implementing it, the lack of such procedures, which Sam has
acknowledged, is not a coding problem that his programming
skill could solve.  It was a compliance decision for which Sam
accepts his part of the responsibility, but for which he was
not a leader or organizer.  That is a core part of the
difference reflected in Sam's plea agreement.

        So where does that bring us?  As detailed in our
submission, we respectfully request that the Court sentence Sam
to time served with no period of supervised release.  As set
forth in our submission in some detail, that's the sentence
that would be no greater than necessary to satisfy the factors
under Section 3553(a)(2).

        I won't go through them again today.  I'll just
commend your Honor to our written submission, but we would also
note that supervised release as a component is not required by
the guidelines here.  Under 5D1.1(a) supervised release is only
mandatory where it's specifically required by statute or where

M7DHReeS

1    a term of more than one year of imprisonment is imposed, and

2    neither condition would apply here.

3          Now, it's also worth noting that despite Sam's lesser

4    role in the offense, he has been subject to the most

5    restrictive pretrial conditions of any of the three founders.

6    Since his arrest in October 2020, Sam has been limited to

7    travel in a small number of states in the U.S.  As your Honor

8    knows from our occasional requests, Mr. Reed needed to seek

9    consent from the government to travel to any other states.  He

10   also could not leave the country because he had to surrender

11   his passport to the government, which it still holds.  At the

12   same time, Mr. Hayes and Mr. Delo were allowed to travel freely

13   throughout their home countries and, in the case of Mr. Delo,

14   in certain other countries as well.  This has been the

15   situation for more than 21 months, and Sam's compliance has

16   been exemplary.  It further underscores why no additional

17   period of probation or supervised release is necessary for Sam.

18         So for all of these reasons, we respectfully request a

19   sentence of time served with no period of supervised release.

20         I do want to add, your Honor, as the government is

21   seeking probation, that if the Court determines to impose a

22   sentence of probation, we would make just a couple of points:

23   First, if probation is ordered, we respectfully request and

24   submit that it should stand alone and, of course, not include

25   any time served or supervised release component.  Probation

M7DHReeS

alone would be more than sufficient, as both the PSR and the government have recommended.  And, second, a probationary sentence should be for the shortest period possible.

For all the reasons we've discussed, Sam's lesser role warrants a meaningful distinction in sentences.  Mr. Delo received 30 months of probation, and Mr. Hayes received 24 months of probation.  Under the guidelines, one year of probation would appropriately reflect the difference in Sam's role if the Court is imposing a sentence of probation.  Two years, as the government seeks, we submit would not.  So respectfully, your Honor, if the Court is inclined to order probation, we would ask for a one-year period with no time served or supervised release component.

Just to conclude briefly, your Honor, there are a couple of additional points to mention.

To the extent the Court determines that a period of either supervised release or probation is warranted, we respectfully request that the conditions for Mr. Reed be consistent with the terms of probation ordered for his codefendants.  So like his codefendants, Mr. Reed should not be subject to any limitations on domestic or international travel. I think the government has agreed to that, your Honor, in their submission.  Also should be allowed to maintain contact with Mr. Hayes and Mr. Delo as they have been allowed to maintain contact with him, and in all other respects should be similar

M7DHReeS

1    to the conditions for them as well.

2             Finally, the PSR included a couple of -- two special

3    conditions that we respectfully submit should not be imposed.

4    The PSR recommended a search condition based on the defendant's

5    criminal conduct, including "fraudulent activity," and second,

6    financial restrictions and disclosure conditions to monitor the

7    defendant's repayment of financial obligations and also to

8    deter the defendant from committing a new offense.  These were

9    not conditions imposed on Mr. Hayes or Mr. Delo.  Mr. Reed

10   actually has not been accused of any fraud.  There's no fraud

11   at issue, and he's already satisfied his $10 million fine in

12   full.  So we would respectfully request that those be set

13   aside.

14             With that, your Honor, even though I know you will

15   tell me it's not necessary, on behalf of Mr. Reed and my team,

16   we would like to thank you and the court and staff for your

17   time and your consideration throughout this case.

18             THE COURT:  All right.

19             MR. YATTER:  Thank you, your Honor.

20             THE COURT:  Thank you.

21             Mr. Reed, have you reviewed the presentence report,

22   the recommendation, and the addendum, and discussed them with

23   your lawyers?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you have any objections?

M7DHReeS

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  I'll listen to you for anything you would

3    like to tell me in connection with sentence, any statement

4    you'd like to make, anything at all you'd like to tell me.

5          THE DEFENDANT:  Thank you, your Honor.

6          THE COURT:  You can remain seated.  Talk into the

7    microphone.

8          THE DEFENDANT:  OK.  Appreciate that.

9          Thank you, your Honor.  Appreciate the opportunity to

10   address the Court.

11         As Mr. Yatter said, I take full responsibility for my

12   role in BitMEX's failure to implement a know-your-customer and

13   anti-money laundering program.  When I cofounded BitMEX in Hong

14   Kong, I was young.  I was coming off a few unsuccessful

15   startups and trying to find my identity.  And two of the most

16   talented people I have ever known wanted to work together on a

17   unique idea in a brand-new space, and obviously I went for it.

18         For years we operated with very little resources and

19   very little success.  When the success suddenly came, the

20   stress was unbelievable.  I wasn't prepared for it.  My coping

21   mechanism was compartmentalization.  I -- when I felt out of my

22   depth, I would simply focus on writing code.  I tried to narrow

23   my responsibilities so that they would be small enough for me

24   to get my arms around them.  Then in doing so, I was complicit

25   in our failures.

M7DHReeS

1          This was a mistake.  We didn't do enough to ensure

2     that we were not serving U.S. customers, and the result of that

3     has been clear.  It's why we're all here today.  I deeply

4     regret this mistake.  Not only was it wrong, but it's had an

5     enormous effect on others, including my business, my family,

6     and my friends.  This head-on experience of the seriousness of

7     my actions has led me to reduce my relationship with the

8     business and focus on my growing family, which has been my top

9     priority all along.

10          I want to thank my wife for being so strong and

11     supportive through all of this.  She is everything to me, as is

12     my family and her family, most of whom are there behind me,

13     just this remarkable collection of my family and friends.  So

14     many of the people here took so much time flying and driving

15     and being here for me, just to support me, and it's painful for

16     them to see me like this, see this situation, but I deeply

17     appreciate them coming.

18          I just wanted to thank you, your Honor, and the court

19     for attention to my case, and I hope that you'll see fit to

20     impose a sentence that allows me to turn the page on this

21     chapter in my life and move on and focus on my family.

22          Thank you, your Honor.

23          THE COURT:  Thank you, Mr. Reed.

24          Mr. Raymond, has the government reviewed the

25     presentence report, the recommendation, and the addendum?

M7DHReeS

1          MR. RAYMOND:  Yes, your Honor.

2          THE COURT:  Does the government have any objections?

3          MR. RAYMOND:  No, your Honor.

4          THE COURT:  I'll listen to you for anything that the

5     government wishes to tell me in connection with sentence.

6          MR. RAYMOND:  Thank you very much, your Honor.

7          I don't want to reiterate too many points made in our

8     submission, but briefly, your Honor, the government

9     respectfully recommends the sentence recommended by probation

10    in the PSR, which is two years' probation.

11         A sentence with some form of supervision is

12    appropriate in this case.  The points I'd like to highlight,

13    your Honor, are, first, the seriousness of the offense.  As

14    your Honor knows, this was a yearlong criminal offense by

15    Mr. Reed and by BitMEX.  The government does not dispute, as

16    Mr. Yatter said, that Mr. Reed was not as culpable.  He was not

17    a leader in the criminal conduct.  However, as a 30 percent

18    owner, he still had the ability to make the decision about

19    whether or not to implement an AML and KYC program.

20         Mr. Yatter mentioned the resources, that BitMEX in

21    some sense lacked the resources to implement such a program or

22    to strengthen its controls.  As your Honor knows, as your Honor

23    can see in the PSR, that statement just is not logical in light

24    of the amount of money the defendant himself and his

25    codefendants earned from this company.  As briefed in some

M7DHReeS

1   detail with respect to Mr. Hayes' sentencing, the company was

2   highly profitable by late 2017, early 2018 when they could have

3   made the decision, when Mr. Reed could have made the decision

4   to use some of the great resources that they were earning to

5   adopt appropriate controls, including a compliant KYC and AML

6   program.

7          With respect to Mr. Reed's own role, he did have the

8   technical ability to strengthen the controls.  There's some

9   discussion about VPNs and Tor.  Your Honor, what the important

10  point that the government respectfully requests that the Court

11  consider is that while Mr. Reed stated to customers sometimes

12  not to use VPNs, he knew that they were doing so, and as

13  previously briefed for his codefendants, there were means that

14  the defendant could have implemented to restrict

15  technologically to restrict the use of VPNs on BitMEX.

16         Your Honor, the other point I'd like to highlight is

17  the need for the sentence imposed to reflect respect for the

18  law.  First, as your Honor knows, this was a willful violation

19  of the Bank Secrecy Act, so it showed deep disrespect towards

20  U.S. law.  Second, Mr. Yatter mentioned that Mr. Reed had an

21  understanding that some of BitMEX's technological features made

22  it less attractive as an actual source for money laundering.

23  As we point out in our submission, your Honor, that is belied

24  or his understanding of that would be belied by the quantum of

25  regulatory inquiries BitMEX was receiving, many of which he was

M7DHReeS

1    included on, which showed that, despite his own understanding

2    based on the technology, regulators were interested because

3    there were allegations and investigations into criminal conduct

4    by users of BitMEX.

5          Finally, your Honor, I just want to end on the point

6    about a disparity between Mr. Reed and his codefendants.  There

7    is no question a sentence of 24 months' probation would be a

8    disparate sentence from that imposed on either Mr. Hayes or

9    Mr. Delo.  That sentence, a sentence of some form of

10   supervision, reflects Mr. Reed's important role in the company

11   while also reflecting the fact that he was less culpable than

12   Mr. Hayes or Delo.

13         With respect to Mr. Reed's prior compliance on bail,

14   as your Honor knows, the relevant factors on bail under 3142

15   and the Bail Reform Act are different than the applicable

16   factors under the law under 3553(a).  Now that Mr. Reed has

17   been convicted, pleading guilty, and the Court is considering

18   imposing sentence, the appropriate conditions are those of

19   3553(a), and those should reflect the seriousness of the

20   offense, the need to reflect respect for the law, as well as

21   specific and general deterrence.

22         Thank you, your Honor.

23         THE COURT:  Thank you, Mr. Raymond.

24         I'll place the presentence report, the recommendation,

25   and the addendum in the record under seal.  I'll also place the

M7DHReeS

parties' submissions to me in the record under seal.  The

parties should place their own submissions in the record not

under seal after redacting any personal identifying

information.

     I adopt the findings of fact in the presentence

report.  Therefore, I conclude that under the current

guidelines, the total offense level is six, the criminal

history category is I, and the guideline sentencing range is

zero to six months.

     I appreciate that the guidelines are only advisory and

that the Court must consider the various sentencing factors in

18 U.S.C. Section 3553(a) and impose a sentence that is

sufficient, but no greater than necessary, to comply with the

purposes set forth in Section 3553(a)(2).

     In this case, the defendant's guideline sentencing

range is in Zone A, and therefore, a sentence consistent with

the guidelines is a sentence of probation without a sentence of

home confinement for part of the sentence of probation.  The

probation department recommends a sentence of two years'

probation, and the government agrees.  The defense urges that

the defendant should be sentenced simply to time served,

without any other period of supervision.

     But as with the codefendants, the Court agrees that

the offense is very serious.  The defendant was a 30 percent

owner of BitMEX and, along with his codefendants, admittedly

M7DHReeS

caused the company to violate the Bank Secrecy Act by failing

to establish anti-money laundering and know-your-customer

procedures.  As the defendant necessarily admitted for purposes

of his plea of guilty to a willful offense, the defendant knew

that it was necessary for the company not to serve United

States customers in order to avoid the regulatory procedures of

the Bank Secrecy Act, but he knew that his company, in fact,

serviced United States customers.  Given the admittedly willful

nature of the violation, the crime was serious.

On the other hand, as the Court made clear with

respect to the codefendants, the government chose not to accuse

the defendant of money laundering or fraud and was well aware

of, or should have been aware of, the guideline range at the

time that it entered into the plea agreement with the

defendant.  Moreover, there are no identifiable victims of the

offense and no need for restitution.  There has been

disgorgement as a result of the defendant's payment of the

$10 million penalty to the CFTC.  The penalty also satisfies

the fine in this case.

The history and characteristics of the defendant also

weigh in the defendant's favor.  This is the defendant's first

offense, and he has a large and supportive family and a history

of charitable contributions.

There is a need to avoid unwarranted sentencing

disparities.  In comparing the defendant's possible sentence to

M7DHReeS

1     those imposed on his codefendants, the defendant appears to be

2     somewhat less culpable.  The defendant did not have a

3     day-to-day supervisory role over the BitMEX employees who

4     continued to carry out the failure to implement the anti-money

5     laundering program.  And while the defendant had a supervisory

6     role within BitMEX, it was not a supervisory role in connection

7     with the criminal activity.  *See generally* Presentence Report,

8     paragraph 57.

9            The government agrees that the defendant is somewhat

10    less culpable than his two codefendants, as reflected in the

11    fact that the stipulated guideline sentencing range for the

12    defendant is in Zone A of the guidelines rather than Zone B for

13    his codefendants.  Therefore, the Court agrees that a sentence

14    that is somewhat less than the sentences of his codefendants

15    would avoid unwarranted sentencing disparities.

16           Therefore, on balance, the Court intends to impose a

17    sentence of 18 months' probation without a condition of home

18    confinement.  Probation will be subject to the mandatory and

19    special conditions of supervision listed on pages 44 and 45 of

20    the presentence report.  The defendant must cooperate in the

21    collection of DNA as directed by the probation officer.  The

22    court will not impose the drug testing condition because the

23    defendant is a low risk of substance abuse.  The Court will

24    also not impose the special condition suggested by the

25    probation department at pages 45 and 46 of the presentence

M7DHReeS

1    report.  There is no need for a search condition or the

2    financial conditions on page 46 in view of the fact that the

3    defendant has already paid his $10 million fine.  Moreover, the

4    defendant will be permitted domestic and international travel

5    and will be permitted to have contact with Messrs. Hayes and

6    Delo.

7         The defendant's obligation to pay a $10 million fine

8    has been satisfied by his payment of the $10 million penalty to

9    the CFTC.  The defendant must pay a special assessment of $100.

10   The Court will not impose restitution because there is no

11   victim under 18 U.S.C. Section 3663.  No forfeiture is sought.

12        The sentence is consistent with the factors in

13   Section 3553(a) and is sufficient, but no greater than

14   necessary, to comply with the purposes set forth in

15   Section 3553(a)(2).

16        I have explained the reasons for the sentence.  Before

17   I actually impose the sentence, Mr. Yatter, I'll recognize you

18   for anything you wish to tell me.

19        MR. YATTER:  Thank you, your Honor.

20        Just as an administrative matter, apart from what

21   you've just said, we'd ask also that pretrial be directed to

22   return Mr. Reed's passport to him and that his $500,000 payment

23   to secure his appearance bond also be ordered to be returned to

24   him.

25        THE COURT:  Usually I do those in response to a

M7DHReeS

1    separate request.  If you send me a letter, I'll endorse the

2    letter.

3              MR. YATTER:  We're happy to do that, your Honor.

4    Thank you.

5              THE COURT:  OK.

6              MR. YATTER:  Nothing further.  Thank you, your Honor.

7              THE COURT:  Mr. Reed, before I actually impose the

8    sentence, I'll recognize you for anything you wish to tell me,

9    anything you'd like to say, anything at all.

10             THE DEFENDANT:  Nothing further, your Honor.

11             THE COURT:  Mr. Raymond, before I actually impose the

12   sentence, I'll recognize you for anything the government wishes

13   to tell me.

14             MR. RAYMOND:  Nothing further, your Honor.

15             THE COURT:  All right.  Pursuant to the sentencing

16   Reform Act of 1984, it is the judgment that the defendant,

17   Samuel Reed, is hereby sentenced to 18 months' probation on

18   Count One.

19             Within 72 hours, the defendant shall report in person

20   to the probation office in this district.  While on probation,

21   the defendant shall comply with the mandatory, standard

22   conditions, and special conditions of probation in this

23   district as listed on pages 44 to 45 of the presentence report.

24             The drug testing condition is suspended.  The

25   defendant must cooperate in the collection of DNA.  Domestic

M7DHReeS

1    and international travel is permitted.  And the defendant is

2    permitted to have contact with Messrs. Hayes and Delo.

3              As I've indicated before, I will not impose the search

4    condition on page 45 or the financial conditions on page 46

5    with respect to providing the probation officer access to any

6    requested financial information and that the defendant must not

7    incur new credit charges.  Those will not be imposed.

8              It is further ordered that the defendant shall pay to

9    the United States a special assessment of $100, which shall be

10   due immediately.

11             I've already explained the reasons for the sentence.

12   Does either counsel know of any legal reason why the sentence

13   should not be imposed as I so stated it?

14             MR. RAYMOND:  No, your Honor.

15             MR. YATTER:  No, your Honor.

16             THE COURT:  All right.  I'll order the sentence to be

17   imposed as I have so stated it.

18             There's a waiver of the right to appeal the sentence,

19   correct?

20             MR. RAYMOND:  Yes, your Honor.

21             THE COURT:  Does either counsel know of any legal

22   reason why the waiver is not effective?

23             MR. RAYMOND:  Not from the government.

24             MR. YATTER:  No, your Honor.

25             THE COURT:  All right.  Mr. Reed, the reason that I

M7DHReeS

1    ask these questions is that generally a defendant has the right

2    to appeal the sentence.  The notice of appeal must be filed

3    within 14 days after the entry of the judgment of conviction.

4    The judgment of conviction is entered promptly after the judge

5    announces the sentence.  If the defendant cannot pay the cost

6    of appeal, the defendant has the right to apply for leave to

7    appeal *in forma pauperis*.  If the defendant requests, the clerk

8    will prepare and file a notice of appeal on the defendant's

9    behalf immediately, and the rules require that a judge inform a

10   defendant of this right to appeal.

11              In this case, the parties advise that you have given

12   up, or waived, your right to appeal the sentence, and I'm

13   confident that when I took your guilty plea, I went over with

14   you the waiver of this right to appeal the sentence.  So it

15   appears that you have given up, or waived, your right to appeal

16   the sentence, but I go over this with you now because I want to

17   make sure that you talked to your lawyers about this so that

18   you are fully informed of all of your rights.

19              Do you understand what I've said?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  All right.  Government moves to dismiss

22   any open counts?

23              MR. RAYMOND:  That's right, your Honor.  That's the S1

24   indictment entirely and Count Two of the original indictment.

25              THE COURT:  You move to dismiss all of those?

M7DHReeS

1          MR. RAYMOND:  Yes, your Honor.

2          THE COURT:  And the defense agrees?

3          MR. YATTER:  Yes, your Honor.

4          THE COURT:  All open counts, including the previous

5   indictment, dismissed on the motion of the government.

6          All right.  Anything further?

7          MR. RAYMOND:  Not from the government, your Honor.

8          MR. YATTER:  Nothing here, your Honor.  Thank you.

9          THE COURT:  Good afternoon, all.

10         MR. RAYMOND:  Good afternoon.

11         MR. YATTER:  Good afternoon.

12         (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25